# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| THE GRISSOMS, LLC <br> c/o Jennifer L. Routte <br> 142 Granville St. <br> Gahanna, OH 43230 <br><br>     Plaintiff, on its own behalf <br>     and on behalf of the class <br>     similarly situated, <br><br> v. <br><br> ANTERO RESOURCES CORPORATION <br> c/o CT Corporation System, <br> 1300 East Ninth Street, <br> Cleveland, Ohio 44114 <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO. <br><br> JUDGE <br><br><br> CLASS-ACTION COMPLAINT <br><br> JURY DEMAND REQUESTED |

1. Plaintiff The Grissoms, LLC, individually and for a proposed class of others similarly situated, submits this Complaint against Defendant Antero Resources Corporation to obtain money damages for Antero violating uniform oil-and-gas leases by underpaying royalties owed to Plaintiff and the class in connection with Defendant's receipt of gross proceeds from the sale of marketable natural gas and natural gas liquids ("NGLs") **after May 2023**.

2. This case is related to *The Grissoms, LLC v. Antero Resources Corp*, No. 2:20-cv-02028 (S.D. Ohio) where this Court found, on August 4, 2023, that Defendant could not deduct NGL processing and fractionation costs under the same uniform oil-and-gas lease as in this case.

3. On October 10, 2023, Plaintiff and Antero stipulated that Antero deducted from class royalties $10 million in NGL processing and fractionation costs for its April 2016 to May 2023 production.

4. On April 2, 2025, the Sixth Circuit affirmed this Court's finding (No. 24-3676) that Antero owes the class $10 million.

5. For May 2023 production through present production, Antero has continued deducting processing and fractionation costs from class royalties, and this complaint seeks damages for these wrongful deductions.

## PARTIES

6. Plaintiff The Grissoms, LLC is an Ohio limited liability company that owns the surface-and-mineral interests in these described lands in Noble County, Ohio (the "Property"):

| County | Township | Sec/Twp/Range | Acreage | Tax Number |
|---|---|---|---|---|
| Noble | Beaver | 21/8/7 | 96 | 01-00-21349-000 |
| Noble | Beaver | 21/8/7 | 75 | 01-00-50112-000 |

7. Defendant Antero Resources Corporation is a Delaware corporation with its principal place of business at 1615 Wynkoop Street, Denver, Colorado, 80202. Antero is an independent oil and natural gas company engaged in the exploration, development, production, and sale of natural gas, crude oil, and NGLs.

8. At all relevant times, Plaintiff leased the surface-and-mineral interests in the Property to Defendant according to a lease that became effective in 2012 and continues in effect.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this case, exclusive of interest and costs, involves claims over $5 million in damages and is a class action in which Plaintiff and class members are citizens of states different than Defendant.

10. This Court has personal jurisdiction over Defendant because Defendant is authorized to do business and conducts business in Ohio, has sufficient minimum contacts with Ohio, and has sufficiently availed itself of Ohio law and markets, thereby rendering the exercise of personal jurisdiction by this Court permissible.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) since this case arose in this district and Defendant's unlawful conduct occurred here.

12. Venue is also proper because Defendant (a) is authorized to conduct business in this district and intentionally availed itself to the laws and markets within this district; (b) does substantial business in this district; and (c) is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

**A. Defendant uniformly transforms certain components of raw liquids-rich natural gas found in the Utica Shale Formation into marketable NGLs.**

13. NGLs are liquid hydrocarbons derived from various components of raw liquids-rich natural gas. Raw liquids-rich natural gas is sometimes called "wet natural gas" or "wet gas."

14. Examples of NGLs include ethane, propane, butane, iso-butane, hexane, iso-hexane, pentane, and iso-pentane.

15. NGLs, including Defendant's, are not in marketable form until a process called "fractionation" is complete.

16. Domestic and international markets for NGLs exist. For example, the Marcus Hook Hub, located outside of Philadelphia, PA, is one of the largest NGL hubs in the United States. Defendant and its agents regularly use the Marcus Hook Hub for the sale of marketable NGLs derived from Defendant's operations in Ohio.

17. Each marketable NGL has its own market price. Thus, on a typical day, the market price of the NGL known as ethane differs from the price of the NGL known as propane.

18. The Utica Shale Formation in Ohio is a geological concentration of calcareous, organic, and rich shale in the Appalachian Basin in Eastern Ohio.

19. The Utica Shale Formation contains raw liquids-rich natural gas (i.e., raw natural gas that contains various suspended liquid molecules that can be transformed through a

3

complicated process into individual marketable NGLs) and dry natural gas (i.e., natural gas that contains primarily methane).

20. Defendant owns and operates a network of 173 horizontal wells in Belmont, Carroll, Guernsey, Monroe, and Noble counties in the Utica Shale Formation where a concentration of raw liquids-rich natural gas exists.

21. These 173 horizontal wells are connected by pipelines in a single gathering, compression, and fractionation system called the Seneca System.

22. Antero Midstream Corporation owns both the gathering pipelines and the compression stations in the Seneca System.

23. MarkWest Energy Partners owns an interest in the processing and fractionation plants that Defendant uses to help create marketable NGLs via the Seneca System.

24. From in-ground to market, Defendant transforms components of the raw liquids-rich natural gas into marketable NGLs via the Seneca System by using the following processes:

    a. Following Defendant's hydraulic fracturing of horizontal wells in the Utica Formation, it extracts a combined stream of (i) raw liquids-rich natural gas and (ii) crude oil from these horizontal wells;

    b. Defendant uses a separator on the horizontal well pad to separate the crude oil from the raw liquids-rich natural gas;

    c. After separating the crude oil, Defendant sends its remaining stream of raw liquids-rich natural gas through gathering pipelines (owned by Antero Midstream) until that stream reaches a compressor station such as the Batesville, Reusser, and Upper Hill compressor stations (also owned by Antero Midstream);

    d. The raw liquids-rich natural gas is compressed at the compressor station, after which Defendant sends that stream of now-compressed, liquids-rich natural gas through a pipeline to the Seneca Processing Plant owned, at least in part, by MarkWest;

    e.    At the Seneca Processing Plant, the processor separates the various liquid hydrocarbons, which are suspended as liquid molecules in the otherwise compressed natural gas, and those various liquid hydrocarbons form into a y-grade NGL mixture called "raw make" or "raw mix" (at this juncture, the raw make is still an unfractionated blend of the various purity products that make up the NGL product family);

    f.    The remaining compressed natural gas, which Plaintiff's case ***does not*** concern, is sent via pipeline to market, and the y-grade raw make, which Plaintiff's case ***does*** concern, is sent via pipeline to a central fractionation facility (here, the MarkWest-owned Hopedale Fractionation Facility);

    g.    At the Hopedale Fractionation Facility, fractionation occurs by heating the raw make to allow for the separation, or fractionation, of the individual components based on their differing boiling points; in this manner, the y-grade raw make is fractionated into individual component NGLs such as ethane, propane, butane, isobutane, hexane, isohexane, pentane, and isopentane;

    h.    After the completion of the fractionation process, the individual components are finally marketable NGLs that exit the tailpipe of the Hopedale Fractionation Facility on their way to markets such as the Marcus Hook Hub;

    i.    Mark West sells the individual component NGLs on Defendant's behalf, or Defendant sells them directly; and

    j.    Monthly, MarkWest charges Defendant the following costs (among others) for services necessary to transform the NGLs into marketable form: a processing fee, a fractionation fee, a C3+ recipient fee, a loading fee, and electricity and fuel fees (collectively referred to as the "MarkWest Fees").

**B.**    **Defendant's first form leases in the Utica Formation favored Plaintiff and other lessors on NGL royalties because of unique language in these leases' market enhancement clauses.**

25.    Horizontal wells are organized into units containing typically 3 to 4 wells, each traversing 400 to 500 acres. Depending on the parcel sizes, each unit typically encompasses between 10 to 30 people's mineral interests.

5

26. Starting in 2012, Defendant leased mineral interests in the Utica Formation through independent land brokers or landmen in targeted geographic areas. Typically, the broker or landman used a Defendant-drafted form lease as the starting point for negotiations.

27. At that time, the large-scale slickwater hydraulic fracturing of horizontal wells was a relatively new process, and the Utica Formation was in the early stages of an oil-and-gas boom where producers like Defendant were rushing to lease land.

28. Due to intense competition between oil-and-gas producers over mineral interests in the Utica Formation, Defendant's form lease contained terms favorable to lessors on NGL royalty payments.

29. Antero's 2012 form leases ("Form 2012") contained these two provisions regarding the calculation of NGL royalty payments:

> Gas. Lessee shall pay Lessor _____ Percent (__%) of the ***gross proceeds*** received by Lessee for all gas and other hydrocarbons and by-products produced from or on the Leasehold Property and sold by Lessee in an arm's length transaction of or through an Affiliated Entity on the sales or re-sales of such gas, the value thereof shall be the higher of (a) the sales price received by Lessee, or (b) the sale price received on all of the Affiliated Entity's sales of the aggregated production volumes, where such aggregated production volumes include production from the Leasehold Property during applicable months of sales. (hereinafter, the "Form 2012 Gas Clause" (emphasis added))
>
> Market Enhancement Clause. It is agreed between the Lessor and Lessee that, notwithstanding any language contained in A) and B) above, to the contrary, all royalties or other proceeds accruing to the Lessor under this lease or by state law shall be ***without deduction directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil***, ***gas and other products produced hereunder to transform the product into marketable form***; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be proportionally deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such

6

enhancements. However, in no event shall Lessor receive a price per unit that is less than the price per unit received by Lessee. (hereinafter, the "Form 2012 Market Enhancement Clause" (emphasis added))

30. The Form 2012 gas clause requires Defendant to pay lessors' natural gas and NGL royalties based on the "gross proceeds" that Defendant receives for natural gas and NGLs.

31. The Form 2012 market enhancement clause prohibits Defendant from deducting from natural gas and NLG gross proceeds any costs associated with transforming the natural gas and NGLs into "marketable form,"—i.e., Defendant cannot deduct any costs incurred before the completion of the processing and fractionation processes and the exiting of the marketable form natural gas from the Seneca Processing Plant and the marketable form NGLs from the tailgate of the Hopedale Fractionation Facility.

32. The Form 2012 market enhancement clause lets Defendant deduct from natural gas and NGL gross proceeds any costs that subsequently enhance the value of *already marketable* natural gas and NGLs—i.e., any costs that enhance the value of the natural gas and NGLs arising *after* the completion of the processing at the Seneca Processing Plant for natural gas and fractionation process at the Hopedale Fractionation Facility for NGLs.

33. In this manner, under the Form 2012 market enhancement clause, Defendant could deduct natural gas transportation costs from the tailgate of Seneca Processing Plant or NGL transportation costs form the Hopedale Fractionation Facility, so long as those costs enhance the value of that natural gas or NGLs. So, with this exception for post-processing and post-fractionation value enhancing transportation costs noted above, the Form 2012 gas and market enhancement clauses require Defendant to pay lessors natural gas and NGL royalties based on NGL gross proceeds without any Impermissible Deductions.

**C.    Defendant's natural gas and NGL royalty payment methodologies for its production *after* May 2023 for all lessors with Form 2012 leases breached these leases' gas and market enhancement clauses.**

34.    Despite this Court's August 4, 2023, finding that Defendant was prohibited under the Form 2012 gas and market enhancement clauses from deducting MarkWest Fees from royalties, Defendant continued to deduct those fees for all production after May 2023 to present. In this manner, Defendant calculates NGL royalties for post-May 2023 production for all lessors with Form 2012 gas and market enhancement clauses the same way.

35.    Defendant uses two methodologies to calculate natural gas and NGL royalties: the NGL profit methodology and the theoretical y-grade gross proceeds methodology, depending on which yields higher royalty payments to the lessor. Both methodologies violate the Form 2012 gas and market enhancement clauses.

**1.    The NGL profit methodology**

36.    The NGL profit methodology involves Defendant paying lessors their share of a well's NGL gross proceeds minus a deduction for at least the lessors' share of the MarkWest Fees.

37.    If Defendant pays natural gas and NGL royalties based on NGL profit per well:

a. The royalty statement shows the NGL gross proceeds and the MarkWest Fees (denoted as "PCR2" on royalty statement) per well.
b. The royalty statement shows the lessor's share of NGL gross proceeds and MarkWest Fees per well based on the lessor's mineral interest as a function of royalties and acreage.
c. The royalty statement then calculates the lessor's NGL royalty payment by deducting the lessor's share of MarkWest Fees from the lessor's share of NGL gross proceeds.

38.    The Form 2012 gas and market enhancement clauses prohibit Impermissible Deductions.

39. The MarkWest Fees are Impermissible Deductions because they are costs incurred to transform natural gas and NGLs into marketable form before processing and fractionation is complete.

40. Antero deducting MarkWest Fees violates the Form 2012 gas and market enhancement clauses.

41. Form 2012 lessors' damages equal all the MarkWest Fees that Antero wrongfully deducted from their natural gas and NGL royalty payments for production after May 2023.

**2. The theoretical y-grade proceeds methodology**

42. The theoretical y-grade proceeds methodology, which is impermissible under the Form 2012 lease as the lease does not mention it, involves Defendant paying lessors their share of a well's theoretical sales proceeds that Defendant would have received had it sold the y-grade entrained within the natural gas stream at prevailing natural gas prices rather than as transformed individually marketable NGLs.

43. If Defendant pays NGL royalties based on theoretical y-grade proceeds per well:

   a. The royalty statement does not show NGL gross proceeds and the MarkWest Fees per well.

   b. Instead, the royalty statement shows only the natural gas royalty calculation.

   c. The natural gas royalty calculation contains the quantity and quality of natural gas (i.e., BTU factor) produced from the well without a quantity and quality deduction for the y-grade extracted.

   d. Theoretical y-grade proceeds equal the difference in the high-quality BTU Factor and the standard BTU Factor of 1.0000 multiplied by the natural gas price multiplied by the lessor's share of the natural gas volume.

44. The Form 2012 gas and market enhancement clauses requires Defendant to base natural gas and NGL royalties on natural gas and NGL gross proceeds without any Impermissible Deductions such as the MarkWest Fees.

45. Where Defendant bases NGL royalty payments on theoretical y-grade proceeds, it calculates NGL royalties by calculating natural gas royalties as if the y-grade raw make were never extracted from the raw liquid-rich natural gas.

46. This process violates the Form 2012 gas and market enhancement clauses because Defendant is not paying lessors natural gas and NGL royalties based on natural gas and NGL gross proceeds without any Impermissible Deductions such as the MarkWest Fees.

47. Form 2012 lessors' damages equal the difference between what Defendant would have paid had it based natural gas and NGL royalty payments on natural gas and NGL gross proceeds without any Impermissible Deductions (such as the MarkWest Fees), and the natural gas and NGL royalties Antero actually paid based on theoretical y-grade proceeds for production after May 2023.

**D.    Plaintiff's lease with Defendant involving mineral interests in the Utica Formation contains Form 2012 gas and market enhancement clauses**

48. On February 10, 2012, Elaine Grissom and her late husband, James Grissom, executed an oil-and-gas lease with Antero (Exhibit 1) regarding the mineral interests underlying the Property.

49. Their lease contained the following Form 2012 gas and market enhancement clauses:

> Gas. Lessee shall pay Lessor Twenty-One Percent (21%) of the gross proceeds received by Lessee for all gas and other hydrocarbons and by-products produced from or on the Leasehold Estate and sold by Lessee in an arm's length transaction of or through an Affiliated Entity on the sales or re-sales of such gas, the value thereof shall be the higher of (a) the sales price received by Lessee, or (b) the sale price received on all of the Affiliated Entity's sales of the aggregated production volumes, where such aggregated production volumes include production from the Leasehold Estate during applicable months of sales.

> <u>Market Enhancement Clause</u>. It is agreed between the Lessor and Lessee that, notwithstanding any language contained in A) and B) above, to the contrary, all royalties or other proceeds accruing to the Lessor under this lease or by state law shall be without deduction directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be proportionally deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price per unit that is less than the price per unit received by Lessee.

50. Elaine and James Grissom assigned the benefits of her lease with Antero to Plaintiff The Grissoms LLC, so it receives royalty payments from Antero.

51. The Property is in Noble County in a portion of the Utica Formation that produces raw liquids-rich natural gas. The following horizontal wells in the Seneca System underly the Property and started producing raw liquids-rich natural gas in 2015: Grissom 1H, Grissom 2H, Grissom 3H, Grissom 4H, Mahoney 1H, and Mahoney 2H.

**E.  Defendant improperly calculated Plaintiff's NGL royalties in violation of Plaintiff's lease for post-May 2023 production.**

52. Plaintiff's 2012 Form lease prohibits the deduction of costs incurred to transform NGLs into marketable form, such as the MarkWest Fees. Yet Defendant deducted at least the MarkWest Fees from Plaintiff's natural gas and NGL royalty payments in violation of Plaintiff's lease.

53. For example, on royalty statement dated July 24, 2024 attached as Exhibit 2, Antero deducted $798.18 in PRC2 (i.e., MarkWest Fees) from Plaintiff's NGL royalty payments (i.e., PPROD) for the Plaintiff's share of Antero's May 2024 NGL production from the Mahoney Unit 1H well:

11

| | | | | Product Unit of Measure | | | |
|---|---|---|---|---|---|---|---|
| GAS - Natural Gas - Mcf | | OIL - Condensate - Barrels | | PPR - Natural Gas Liquids - Gallons | | SHK - Shrink Gas - Mcf | |
| | | | | Interest Type Codes | | | |
| R - Royalty Interest | | OR - Overriding Royalty | | NPR - Non Participating Royalty | | W - Working Interest | |
| | | | | Deduction Codes | | | |
| CMR - Compression | | COM - Compression | | FUL - Fuel | | GTH - Gathering | |
| L&U – Loss and Unaccounted For | | OILMK - Oil Marketing | | OILTR - Oil Trucking / Transport | | PFUL – Plant Fuel | |
| PRC - Processing | | STB - Oil Stabilization / Treating | | TRN - Transportation | | | |
| OH_ADV - OH Ad Valorem Taxes | | OH_SEV - OH Severance Taxes | | WV_ADV - WV Ad Valorem Taxes | | WV_SEV - WV Severance Taxes | |

| Property# | | | | Property Name | | | State | County | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | ------ Gross ------ | | | ------ Net ------ | | |
| Prod Date | Prod Code | BTU | Int Type | Price | Gross Volume | Value | Deductions | Net Interest | Paid Interest | Value | Deductions | Net |
| 11017.1 | | | | MAHONEY UNIT 1H | | | OH | OH | | API: 34-121-24484-00-00 | | |
| 03/2024 | GAS | 1.0000 | R1 | 0.000 | 0.00 | 0.00 | -214.01 | 0.03447596 | 0.03447596 | 0.00 | | 0.00 |
| | | | | | | | 87.74 CMR1 | | | | 0.00 | |
| | | | | | | | 126.27 GTH3 | | | | 0.00 | |
| | | | | | | | 0.00 OH_SEV2 | | | | 0.00 | |
| 05/2024 | PPROD | 0.0000 | R1 | 0.964 | 49854.23 | 48075.77 | 24923.92 | 0.03447596 | 0.03447596 | 1657.46 | | 859.28 |
| | | | | | | | 0.00 PRC | | | | 0.00 | |
| | | | | | | | 23151.85 PRC2 | | | | 798.18 | |
| 05/2024 | GAS | 1.0000 | R1 | 0.000 | 0.00 | 0.00 | -12740.55 | 0.03447596 | 0.03447596 | 0.00 | | 0.00 |
| | | | | | | | 12740.55 GTH3 | | | | 0.00 | |

54. As a result of this deduction, Antero only paid Plaintiff $859.28 for its share of Antero's May 2024 NGL production from the Mahoney Unit 1H well, when Antero should have paid Plaintiff $1,657.46. Thus, Plaintiff's damages for just this example equals $798.18. This example repeats itself in the rest of the July 24, 2024 royalty statement and for all others Plaintiff received for production after May 2023.

## CLASS-ACTION ALLEGATIONS

55. Plaintiff sues individually and under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of itself and the following class:

> All persons who executed a lease with Antero for mineral interests underlying an Antero-owned horizontal well in the Seneca System from which streams of raw liquids-rich natural gas can be extracted, which lease contains Form 2012 gas and market enhancement clauses and entitled its lessors to receive royalty payments from Antero for post-May 2023 production from their mineral interests.
>
> Excluded from the class is Antero, its officers and directors, counsel of record and their parents, spouses, and children, and judicial officers and their parents, spouses, and children.

56. Plaintiff is class member. The class member size and identities are the same as the certified class in *The Grissoms, LLC v. Antero Resources Corp.*, No. 2:20-cv-02028 (S.D. Ohio). Therefore, the class is ascertainable.

12

57. Plaintiff's claim is typical of class members' claims because their claim is based on Defendant's continued breach of contract for post-May 2023 production that arose from Defendant Form 2012 gas and market enhancement clauses.

58. Common factual and legal questions exist among Plaintiff and class members. These common questions predominate over questions that might affect only individual class members' claims, and they generate common answers including:

   a. Did all class members execute a lease with Defendant for mineral interests underlying a Defendant-owned horizontal well in the Seneca System that allows for the extraction of raw liquids-rich natural gas;

   b. Did all class members' leases contain Form 2012 gas and market enhancement clauses;

   c. Did all class members receive royalty payments from Defendant for post-May 2023 production that contained MarkWest Fee deductions;

   d. Did Defendant breach all class members' leases; and

   e. Are all class members entitled to damages resulting from Defendant breaches?

59. Absent a class action, most class members will find the cost of litigating their claims prohibitive and will have no effective remedy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation, particularly as to liability because a class action conserves the Courts' resources and promotes consistent and efficient adjudication.

60. Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving oil-and-gas litigation. Neither Plaintiff nor its counsel have interests adverse to those of the other class members.

61. Class certification is appropriate under Rule 23(b)(2) because Defendant acted on grounds generally applicable to Plaintiff and class members all of whom are at imminent risk of irreparable harm from Defendants' continued improper royal calculations. Thus, Plaintiff and class members are entitled to final injunctive relief as well as declaratory relief that establishes their rights and Defendant's duties with respect to Defendant's misconduct.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract Related to Defendant's NGL Profit Methodology

62. Plaintiff realleges and incorporates by reference the allegations in the previous paragraphs.

63. To prove a breach-of-contract claim, a party must show: (1) the existence of an agreement, (2) the nonbreaching party fulfilled its obligations under the agreement; (3) a breach without legal justification occurred; and (4) the nonbreaching party suffered damages.

64. Under Ohio law, an oil-and-gas lease is subject to the traditional rules of contract construction. *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 525 (2016). Based on the Sixth Circuit's ruling in *The Grissoms LLC v. Antero Resources Corp.,* No. 24-3676, Defendant is prohibited from deducting MarkWest Fees from class royalties under the language of the Form 2012 gas and market enhancement clauses.

65. Plaintiff and class members' leases with Defendant contain the uniform Form 2012 gas and market enhancement clauses.

66. These clauses prohibit Defendant from deducting costs incurred to transform natural gas and NGLs into marketable form, which are Impermissible Deductions that include the MarkWest Fees.

67. Yet Defendant uniformly deducts Plaintiff's and class members' share of at least the MarkWest Fees from their NGL and natural gas royalty payments for post-May 2023 production in violation of the uniform Form 2012 gas and market enhancement clauses.

68. Where Defendant pays Plaintiff and class members NGL royalties based on NGL profit methodology, their damages equal at least their share of MarkWest Fees deducted from their NGL royalty payments for post-May 2023 production.

## COUNT II
### Breach of Contract Relating to Theoretical Y-Grade Gross Proceeds Methodology

69. Plaintiff realleges and incorporates by reference the allegations in the previous paragraphs.

70. To prove a breach-of-contract claim, a party must show: (1) the existence of an agreement, (2) the nonbreaching party fulfilled its obligations under the agreement; (3) a breach without legal justification occurred; and (4) the nonbreaching party suffered damages.

71. Under Ohio law, an oil-and-gas lease is subject to the traditional rules of contract construction. *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 525 (2016). Based on the Sixth Circuit's ruling in *The Grissoms LLC v. Antero Resources Corp.*, No. 24-3676, Defendant is prohibited from deducting MarkWest Fees from class royalties under the language of the Form 2012 gas and market enhancement clauses.

72. Plaintiff's and class members' leases with Defendant contain the uniform Form 2012 gas and market enhancement clauses.

73. These clauses require Antero to base NGL royalties on NGL gross proceeds without any Impermissible Deductions such as the MarkWest Fees.

15

74. But Defendant uniformly bases NGL royalties on theoretical y-grade gross proceeds for post-May 2023 production in violation of the uniform Form 2012 gas and market enhancement clauses.

75. Where Defendant pays Plaintiff and class members NGL royalties based on theoretical y-grade gross proceeds methodology, their damages equal the difference between what Defendant would have paid them had Defendant based NGL royalty payments on NGL gross proceeds without any MarkWest Fees deductions and what NGL royalties Defendant actually paid them based on theoretical y-grade gross proceeds for all post-May 2023 production.

## COUNT III
### Injunctive Relief

76. Plaintiff realleges and incorporates by reference all allegations in the previous paragraphs.

77. Plaintiffs and class members are substantially likely to prevail on the merits because of the acts alleged herein against Defendant.

78. Plaintiffs and class members will suffer irreparable injury if the Court does not enjoin Defendant from engaging in continued improper royal calculations.

79. If the Court does not enjoin Defendants' improper royal calculations, the harm to Plaintiffs and class members would clearly outweigh any potential harm to Defendant from enjoining its misconduct.

80. No third parties will be harmed by granting the requested injunctive relief.

81. The requested injunctive relief will serve the public interest because it will prevent Defendant from continuing to harm Plaintiff and class members.

82. A preliminary and permanent injunction is needed to prevent the irreparable harm Defendant will cause Plaintiffs and class members by maintaining their illegal behavior.

83. Plaintiffs and class members lack a plain, speedy, or adequate remedy at law.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests this Court:

a. Enter judgment against Defendants for its continued improper royal calculations in such amounts as will fully and adequately compensate Plaintiff and class members for the damages they have suffered for post-May 2023 production in an amount to be determined at trial;

b. Award Plaintiff and class members post-judgment interest;

c. Award Plaintiff its expenses of litigation, including reasonable attorneys' fees;

d. Appoint Plaintiff as the class representative;

e. Appoint Plaintiff's counsel as counsel for the class;

f. Enjoin Defendant from continuing to improperly calculate royal payments; and

g. Award Plaintiff and class members such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff seeks a trial by jury on all counts and matters set forth.

Dated: April 3, 2025

Respectfully submitted,

*/s/ Logan Trombley*
Logan Trombley (#0096858)
Warner Mendenhall (#0070165)
**MENDENHALL LAW GROUP**
190 N. Union St., Suite 201
Akron, OH 44304
(330) 535-9160
warner@warnermendenhall.com

Daniel R. Karon (#0069304)
**KARON LLC**
631 W. St. Clair Ave.
Cleveland, OH 44113
(216) 622-1851
dkaron@karonllc.com

Larry D. Shenise (#0068461)
P.O. Box 471
Tallmadge, Ohio 44278
(330) 472-5622
ldshenise@sheniselaw.com

John W. Barrett*
Brian R. Swiger*
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301
T: (304) 345-6555
F: (304) 342-1110
jbarrett@baileyglasser.com
bswiger@baileyglasser.com

*Pro hac vice* applications forthcoming

*Attorneys for Plaintiff and the class*