**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| The Grissoms, LLC, | : | |
| Plaintiff, | : | Case No.: 2:25-cv-00349-EAS-EPD |
| v. | : | |
| Antero Resources Corp., | : | Judge Edmund A. Sargus, Jr. |
| | | Magistrate Judge Elizabeth P. Deavers |
| Defendant. | : | |

**PLAINTIFFS' UNOPPOSED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>**

Plaintiff The Grissoms, LLC ("Plaintiff") has reached a proposed class action Settlement with Defendant Antero Resources Corp. ("'Antero"). Plaintiff moves this Court for an order: (i) preliminarily approving the proposed Settlement (all capitalized terms in these moving papers shall be defined as set forth in the parties' Settlement Agreement unless otherwise stated), attached as Exhibit 1 to the accompanying declaration of Logan Trombley ("Trombley Decl."); (ii) certifying the proposed Settlement Class according to Fed. R. Civ. P. 23 (b)(3); (iii) appointing Class Counsel for the Settlement Class; (iv) appointing Epperly Re: Solution as Settlement Administrator to perform required duties under the Settlement; (v) directing that the Settlement Class be notified of the proposed Settlement, according to Fed. R. Civ. P. 23(c)(2)(A) and 23(e)(1), in the form and manner proposed by the Parties; and (vi) scheduling a Final Fairness Hearing where the Court may consider whether it should finally approve the Settlement and consider Plaintiffs' counsel's application for an award of attorneys' fees and reimbursement of litigation expenses.

November 6, 2025                          Respectfully submitted,

                                          */s/Logan Trombley*
                                          Logan Trombley (#0096858)
                                          **MENDENHALL LAW GROUP**
                                          190 N. Union St., Suite 201
                                          Akron, OH 44304
                                          (330) 535-9160
                                          logan@warnermendenhall.com

                                          Daniel R. Karon (#0069304)
                                          **KARON LLC**
                                          631 W. St. Clair Avenue
                                          Cleveland, OH 44113
                                          (216) 622-1851
                                          dkaron@karonllc.com

                                          John W. Barrett*
                                          **BAILEY & GLASSER LLP**
                                          209 Capitol Street
                                          Charleston, WV 25301
                                          T: (304) 345-6555
                                          F: (304) 342-1110
                                          jbarrett@baileyglasser.com
                                          bswiger@baileyglasser.com

                                          *Attorneys for Plaintiff*

                                          * *Pro Hac Vice* Applications Filed Simultaneously

## MEMORANDUM IN SUPPORT

### I.    Background

Plaintiff filed a class action lawsuit against Defendant Antero on behalf of people and companies who executed oil and gas leases with Defendant for mineral interests underlying Antero-owned wells in the Seneca System. Plaintiff's lawsuit alleges that Defendant breached its lease agreements with Plaintiff and Class Members by taking impermissible deductions for post-production processing and fractionation expenses after May 2023.Defendant produced information showing that the amount deducted from royalties paid to members of the Proposed Settlement Class for processing and fractionation costs for production after May 2023 is $1,129,000, net of volumetric reductions for gas that was not sold for which Antero paid royalties and excluding NGL transportation costs.

With respect to the leases in the Proposed Settlement Class, Defendant has agreed to pay $1,129,000 (100 percent of Plaintiff's and Class Members' damages) to resolve Plaintiff's lawsuit, has agreed to certification of the Class for settlement purposes only, and has agreed, absent a change in governing law or precedent or other cause, to no longer to deduct directly or indirectly processing costs and fractionation costs from royalties paid to members of the Proposed Settlement Class. Defendant has already made this modification to the royalty calculation for all royalty payments made on or after June 1, 2025 (April 2025 production). The Parties have agreed to settle all claims in this matter on the terms and conditions set forth below, subject to the Court's Final Order and Judgment that their Agreement is a fair, reasonable, and adequate settlement under Federal Rule of Civil Procedure 23(e). Further, the Parties agree that their Agreement is expressly conditioned upon Preliminary Approval and Final Approval by the Court. Should these conditions not be met, unless otherwise stated herein, this Agreement and the underlying Settlement shall be null, void, and of no further force or effect, and the Parties shall be returned to their *status quo ante* position.

## II.     The Parties' settlement

### A.     The Settlement Class

The Proposed Settlement would provide monetary and injunctive relief to the following

Settlement Class, which the parties propose be certified pursuant to Fed. R. Civ. P. 23(b)(3):

> All persons who executed a lease with Antero for mineral interests
> underlying an Antero-owned horizontal well in the Seneca System from
> which streams of raw liquids-rich natural gas can be extracted, which
> lease contains the Form 2012 Gas and Market Enhancement Clause and
> entitled its lessors to receive royalty payments from Antero for production
> from their mineral interests after May 2023, who were class members in
> *The Grissoms, LLC v. Antero Resources Corporation*, Case No. 20-cv-
> 2028 (S.D. Ohio) or are successors-in-interest to such class members.

These persons are all identified in Exhibit A to the Settlement Agreement and Defendant

provided Plaintiff with their last known addresses for purposes of notice.

### B.     The Parties' negotiated settlement relief

In consideration for the dismissal of this lawsuit with prejudice and for a full and complete

Release, Final Order and Judgment, Defendant agrees to pay into a Qualified Settlement Fund

$1,129,000 (the "Settlement Amount"), subject to the conditions provided in the Settlement

Agreement.

In full accord and satisfaction of all Released Claims, Defendant will pay into the Qualified

Settlement Fund the Settlement Amount within 7 business days of the end of the period for members

to opt out of the Proposed Settlement Class, unless Defendant elects to exercise its right to seek an

adjustment of the amount of the Settlement Payment or withdraw from the settlement as a result of

participation in the settlement falling below the 5 percent Participation Threshold. If Defendant

elects to seek an adjustment of the amount of the Settlement Payment rather than withdraw from the

Settlement, Defendant shall fund the revised amount of the Settlement Payment into a Qualified

Settlement Fund within 10 days of reaching agreement with class counsel on the adjusted amount.

The Settlement Amount is an all-in, all-cash payment. In no event shall Defendant be liable for any amount greater than the Settlement Amount. The Settlement Amount will be used to account for and satisfy in full any and all payments owed to the Participating Class Members based on all claims raised or that could have been raised in the Lawsuit, any Attorneys' Fees and Expenses, and the Administrative Expenses, as set forth in the Settlement Agreement.

### C.    Release

Upon the entry of a Final Order and Judgment, the Parties agree that Plaintiff and Participating Class Members, on behalf of themselves and any other legal or natural person or entity who may claim by, through or under them, will fully, finally, and forever release Defendant and its predecessors, successors, and all past, present, and future subsidiaries, parents, assigns, affiliates, officers, directors, agents, members, partners, managers, shareholders, attorneys, insurers, and employees acting in the foregoing capacity from any and all claims, causes of action, damages, interest, or demands of whatsoever kind and character, whether known or unknown, including, without limitation, claims or causes of action for breach of contract relating to the calculation, payment and reporting of royalties to members of the Proposed Settlement Class for oil, natural gas, and natural gas liquids produced, sold or taken in-kind by Defendant under the class leases for the production months through and including March 2025 that are or could have been the subject of this lawsuit, except for claims limited to mathematical or calculation errors in determining volumes, prices, values, or decimal interests. The release of claims does not preclude Defendant from arguing claim preclusion against any Proposed Settlement Class member based upon the judgment rendered in The Grissoms LLC v. Antero Resources Corp., 2:20-cv-02028, referred to as *Grissoms I*.

As consideration for Defendant's Settlement Payment, each Participating Class Member represents and warrants that they have not assigned or transferred in any form or fashion the right to receive compensation for any underpayment of royalties during the compensation period to any

Case: 2:25-cv-00349-EAS-EPD  Doc #: 17  Filed: 11/06/25  Page: 6 of 23  PAGEID #: 84


person, entity, or other third-party.

Plaintiff and Class Members agree that Defendant may raise the Final Order and Judgment as a complete defense to any action or proceeding encompassed by the Parties' Release and that the Final Order and Judgment will preclude any action or proceeding encompassed by their Release.

### D. Notice program

Within 30 days of Preliminary Approval, which period may be extended by the Parties if necessary, the Settlement Administrator shall mail the Proposed Class Notice attached to the Settlement Agreement as Exhibit B to each Class Member's last known address. Any Class Notice returned as undeliverable, but with a forwarding address, shall be promptly remailed to the forwarding address by the Settlement Administrator. The Settlement Administrator shall use reasonable efforts to skip trace or otherwise search for and locate the whereabouts of any Class Member whose Class Notice is returned via return mail, including, but not limited to, performing a National Change of Address Registry Check and other appropriate search for all Class Notices returned as undeliverable without a forwarding address.

If the Settlement Administrator learns of a change in ownership or a new address for any Class Member whose Class Notice was returned via return mail, the Settlement Administrator will promptly remail the Settlement Notice. In addition, the Settlement Administrator is empowered to take any reasonable steps available to contact Class Members to provide notice of this Settlement.

In accordance with Federal Rule of Civil Procedure 23(c)(2)(B)(v) and 23(e), the Class Notice shall inform Class Members of their right of exclusion. Each Class Member has the right to opt out of the Class by mailing an Exclusion Request by the Opt-Out Deadline, which shall be no later than 40 days from the date that Class Notice is issued. Any failure to opt out in accordance with applicable deadlines constitutes a knowing and voluntary waiver of any right to opt out of the Class.

### E. Attorneys' fees and litigation expenses

As payment for Attorneys' Fees and Expenses, Class Counsel shall apply to the Court for one-third of the common fund. Class Counsel will also seek reimbursement of litigation expenses after payment of attorneys' fees. Once approved by the Court, Class Counsel's Attorneys' Fees and Expenses shall be paid by the Settlement Administrator from the Qualified Settlement Fund within 3 days following the Effective Date. Plaintiff will also file a motion for a $1,000 Incentive Award. If approved by the Court, this award shall be paid by the Settlement Administrator out of the Qualified Settlement Fund, within 3 days following the Effective Date.

## III. Law and discussion

### A. The Court should certify Plaintiff's Settlement Class under Fed. R. Civ. P. 23(a) and (b)(3)

When presented with a class settlement before a decision on class certification, the Court must ensure that the proposed settlement class satisfies the requirements of Fed. R. Civ. P. 23(a) and the subsections of Fed. R. Civ. P. 23(b). *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 625 (6th Cir. 2007). Here, the Court may certify the parties' proposed Settlement Class under Fed. R. Civ. P. 23(a) & (b)(3).

#### 1. The Settlement Class satisfies Fed. R. Civ. P. 23(a)

When a settlement is reached before certification, a court must determine whether to certify the settlement class. *See, e.g.*, Manual for Compl. Litig., § 21.632 (4th ed. 2014); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Class certification is warranted when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. As demonstrated below, the proposed Settlement Class readily satisfies these requirements.[1]

---

[1] Defendant stipulates for settlement purposes only to the certification of the Settlement Class but does not waive, and instead expressly reserves, its right to challenge the propriety of conditional or class certification for any other purpose.

**Numerosity**. Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class is sufficiently numerous, as it consists of 364 geographically dispersed class members listed in Exhibit A to the Settlement Agreement, thus making joinder impracticable. *See, e.g., Pickett v. City of Cleveland*, 140 F.4th 300, 308 (6th Cir. 2025) ("a class of 40 or more members raises a presumption" of numerosity) (quoting *Helwig v. Concentrix Corp.*, 345 F.R.D. 608, 619 (N.D. Ohio 2024) and 1 Newberg and Rubenstein on Class Actions § 3:12 (6th ed.)). Accordingly, Rule 23's numerosity requirement is satisfied.

**Commonality**. Rule 23(a)(2) requires that there be one or more questions common to the class. "[T]here need only be one question common to the class, so long as the resolution of that question will advance the litigation." *Philips v. Philip Morris Cos. Inc.*, 298 F.R.D. 355, 363 (N.D. Ohio 2014); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("Even a single [common] question will do.") (quotation marks omitted).

This case raises multiple common questions, including (a) did all Class Members execute a lease with Defendant for mineral interests underlying a Defendant-owned horizontal well in the Seneca System that allows for the extraction of raw liquids-rich natural gas; (b) did all Class Members' leases contain Form 2012 gas and market enhancement clauses; (c) did all Class Members receive royalty payments from Defendant for post-May 2023 production that contained processing and fractionation costs deductions; (d) did Defendant breach all Class Members' leases; and (e) are all Class Members entitled to damages resulting from Defendant breaches? *See Rikos v. P&G*, 799 F.3d 497, 505 (6th Cir. 2015) (commonality is satisfied where "a common question [] will yield a common answer for the class"). Accordingly, Rule 23's commonality requirement is satisfied.

**Typicality**. The typicality test under Rule 23(a)(3) is "not onerous." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008). A plaintiff's claims are "typical" if they are reasonably coextensive with those of absent class members. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156–57 (1982). Plaintiff's claims and those of the Settlement Class it represents are based on the same course of conduct and the same legal theory. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (typicality met where a plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory") (citation omitted). Moreover, Plaintiff suffered the same types of alleged harm as the Class Members it seeks to represent. Therefore, typicality is satisfied.

**Adequacy of representation.** As the proposed Class Representatives, Plaintiff will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts ask two questions to determine whether a proposed class representative will adequately represent the class: (1) does the named plaintiff share common interests with unnamed class members and (2) will the named plaintiff and its counsel prosecute the action vigorously on behalf of the class? *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012).

Interim Class Counsel have extensive experience litigating and resolving class actions, and are well qualified to represent the Settlement Class. Trombley Decl. at Exhibits 2, 3, and 4. Interim Class Counsel vigorously litigated and negotiated this action on behalf of the Settlement Class, thus leading to an efficient and expeditious resolution.

Likewise, Plaintiff was committed to the Settlement Class, having previously shown the willingness to sit for deposition, provide pertinent information about losses, search for and provide documents and information in response to discovery requests, and regularly communicate with counsel about the case. Plaintiff was involved in the settlement process and is committed to reviewing and approving the proposed Settlement.

9

Finally, Plaintiff's and Interim Co-Lead Class Counsel's interests are aligned with and not antagonistic to the interests of the Settlement Class, with whom they share an interest in obtaining relief for alleged harms caused by Defendant.

### 2. The Settlement Class satisfies Rule 23(b)(3)

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must be satisfied. Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3)

**Predominance.** "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Courts within the Sixth Circuit favor class treatment of claims stemming from a "common course of conduct establishing Defendants' liability." *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 452 (S.D. Ohio 2009); *see also Daffin*, 458 F.3d at 554 (finding predominance where class members alleged the same product defect).

Common questions predominate here because the Settlement Class Members' claims all arise under the same law and the same alleged misconduct. The predominating common questions include whether Defendant breached its contract with Plaintiff and Class Members, and whether Plaintiff and Class Members advance a classwide calculation for valuing damages. This one-size-fits-all approach to liability and damages avoids the potential for individual issues, creating trial inefficiencies. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

**Superiority.** Rule 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at 615. Class treatment is superior to other methods for the resolution of this case, considering the multitude of claimants and the meaningful relief offered to Settlement Class Members. Moreover, Settlement Class Members remain free to exclude themselves if they wish .

**B.      The Court should preliminarily approve the Settlement**

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015); *see In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) (Federal Rule of Civil Procedure 23 provides that "[a] class action shall not be dismissed or compromised without the approval of the court"). Ultimate approval of a class action settlement requires that the class representatives and class counsel adequately represented the class, the proposal was negotiated at arm's length, and the relief is adequate. Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the Court need determine the proposed "'settlement is fair, adequate, and reasonable under the circumstances, as well as consistent with public interests,' and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than if pursued to a verdict by a jury." *Telectronics*, 137 F. Supp. 2d at 1008. "Given that the Court will have an opportunity to analyze the proposed Settlement Agreement at a final approval hearing, 'at this junction, [the Court] is not obligated to, nor could it reasonably, undertake a full and complete fairness review.'" *JLKX Corp. v. Bobcat Energy Resources, LLC*, 2019 WL 4573710, *7 (N.D. Ohio Sept. 20, 2019) (*citing In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio, 2001)); *see In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1:01-CV-9000, 2001 WL 1842315, at *3

(N.D. Ohio Oct. 20, 2001) ("[A]pproval of the proposed settlement agreement . . . is only the first step in an extensive and searching judicial process. . . . The Court [should not "rubber-stamp" the agreement] but also must be mindful of the substantial judicial processes that remain to test the assumptions and representations upon which the parties' motions are premised.").

Preliminary approval is appropriate where a "proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Telectronics*, 137 F. Supp. 2d at 1015–16; *see also In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. at 350 (court must only "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties" and should not second guess the settlement terms). When a settlement is "the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350–51 (N.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983)). Further, this limited review should consider the uncertainties, risks, and costs associated with continued litigation. *Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982).

In recently amending Rule 23, the advisory committee recognized that the various circuits independently generated their own lists of factors to consider in determining whether a settlement is fair, reasonable, and adequate.[2] Fed. R. Civ. P. 23(e)(2) advisory committee's note to the 2018 amendment. Because the Sixth Circuit factors are similar to the factors listed in the advisory committee's amendment, caselaw in this Circuit applying those factors remains instructive, and

---

[2] In the Sixth Circuit, those factors are: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

12

Plaintiff will continue to rely on it. Considering the Sixth Circuit's factors, channeled through the advisory committee's amendment, Plaintiff will "present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.* As detailed below, the Settlement deserves preliminary approval.

### 1. Plaintiff and interim Class Counsel have adequately represented the proposed Settlement Class (Rule 23(e)(2)(A))

For several years, Plaintiff and interim Class Counsel prosecuted the predecessor to this action (i.e., *Grissom I*) on behalf of the proposed Settlement Class with vigor and dedication and are prepared to do so again here, with the aim of securing substantial and expeditious relief for Class Members affected by Defendant's improper royalty calculations. *See* Fed. R. Civ. P. 23(e)(2)(A). As discussed above, interim Class Counsel thoroughly investigated the factual and legal issues involved, had prepared substantial discovery, and was prepared to work with experts to establish liability and assess the Settlement Class's damages. Plaintiff has also been actively engaged in the case and regularly communicates with counsel, including evaluating and approving the proposed Settlement.

### 2. The Proposed Settlement is the product of serious, informed, arm's-length negotiations (Rule 23(e)(2)(B))

Rule 23(e)(2) next asks whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The claims asserted against Defendant are identical to those asserted in *Grissom I*, which resulted in a $10,400,000 judgment, affirmed by the Sixth Circuit. Here, $1,129,000 represents 100 percent of Class Members' damages. In this manner, a trial would be purposeless for Plaintiff and the Class as Defendant has offered to pay via settlement all the damages it owes to Plaintiff and Class Members.

In this manner, the Settlement Agreement will provide relief now, as opposed to years down the road. Because this Settlement avoids further expensive litigation and inconvenience to the Court, Plaintiff and Defendant agree it is desirable and beneficial that the case be settled. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("in performing this balancing task [of weighing factors in settlement fairness], the trial court is entitled to rely upon the judgment of experienced counsel for the parties."); *Sellards v. Midland Credit Mgmt., Inc.*, No. 1:20-CV-02676, 2023 WL 3869023, at *9 (N.D. Ohio May 2, 2023), report and recommendation adopted, No. 1:20-CV-02676, 2023 WL 3641447 (N.D. Ohio May 25, 2023) ("counsel for both parties seek approval of the settlement agreement, and their opinions are entitled to deference").

### 3.    The Proposed Settlement is fair, reasonable, and adequate, and it falls within the range of possible approval

The Court must "ensure the relief provided for the class is adequate," taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed distribution plan, including the claims process; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement made in connection with the proposal, as required under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).[3] These factors support preliminary approval.

### i.    The Settlement relief outweighs the costs, risks, and delay of trial and appeal (Rule 23(e)(2)(C)(i))

The Settlement Agreement provides for a $1,129,000, all-cash settlement to cover 100 percent of Class Members' damages. The proposed Settlement is more than reasonable and adequate—it is exemplary—because it allows Class Members to recover damages that would otherwise be beyond their reach if they were to proceed individually, given the expenses and costs of complex litigation.

---

[3] The Sixth Circuit considers the complexity, expense and likely duration of the litigation; the likelihood of success on the merits; the opinions of class counsel and class representatives; the reaction of absent class members; and the public interest. *UAW*, 497 F.3d at 631.

14

This Settlement is also highly advantageous as compared to trial. Were this case to proceed to trial, it would be a lengthy proceeding involving complex proof of oil-and-gas issues that would be expensive for both sides. *See Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (weighing in favor of settlement the necessity of complex scientific proof and cost of the experts necessary to present it, which would have been very expensive for both sides).

Furthermore, the Settlement Agreement avoid the uncertainty, risk, delay, and trouble of further litigation. *See Midland Funding, LLC v. Brent*, No. 3:08 CV 1434, 2011 WL 3557020, at \*12 (N.D. Ohio Aug. 12, 2011) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."). The proposed Settlement is positioned to deliver financial relief to Class Members quickly, rather than after years of trial and appeal.

The Proposed Settlement has "no obvious deficiencies, does not improperly grant preferential treatment" to any segment of the proposed Settlement Class, is fair, adequate, reasonable, "falls within the range of possible approval," and this Court should preliminarily approve it. *Telectronics*, 137 F. Supp. 2d at 1015.

### ii. The Settlement will distribute relief effectively and equitably to the Class (Rules 23(e)(2)(C)(ii) and 23(e)(2)(D))

In considering settlement approval, the Court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).

If this Court approves the Settlement, in addition to what is already set forth in the Settlement Agreement and described further below, Plaintiffs will submit a distribution plan to the Court following preliminary approval. As a part of the notice plan, Class Members will have the opportunity to opt out of or object to the Settlement. Also, the Settlement Administrator will determine the amount of each Class Member's payment consistent with the distribution plan. Approval of distribution plan is meant to be separate and distinct from the Court's approval of the Settlement Agreement, and Plaintiff followed this same procedure in *Grissom I*.

        **iii.**         **Settlement Class Counsel will seek reasonable attorneys' fees and expenses (Rule 23(e)(2)(C)(iii))**

Assuming the Court preliminarily approves the proposed Settlement, Plaintiffs' requested Fee and Expense Award will be fully addressed in Class Counsel's Motion for Fees and Expenses. At that time, Plaintiffs will submit additional detailed information to support their requested award, and the Court will have the opportunity to evaluate the reasonableness of their request. *Waters v. Pizza to You, L.L.C.*, No. 3:19-CV-372, 2022 WL 404614, at *4 (S.D. Ohio Feb. 9, 2022) (Rose, T.) ("At final approval, courts will have a full record of class counsel's expenses and will consider Class Members' objections (if any) to the preliminarily-approved fee award.").

Class Counsel intend to seek one-third of the total monetary recovery achieved by the Settlement Agreement before seeking reimbursement of their litigation expenses. The Sixth Circuit has recognized as acceptable a one-third attorneys' fee request. (Class Counsel's costs and expenses will be nominal.) *Smith v. First Energy Corp.,* No. 20-cv-3755, 2022 WL 22691867, at *9 (S.D. Ohio Dec. 5, 2022) (Sargus, J.) ("[C]ommonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund." (quotation marks omitted)). *See also Johnson v. Midwest Logistics Sys., Ltd*., 2013 WL 2295880

(S.D. Ohio May 24, 2013) (approving 33% attorneys' fees and expense award in common fund settlement); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) ("Attorneys['] fees awards typically range from 20 to 50 percent of the common fund."); *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) ("Typically, the percentage awarded ranges from 20 to 50 percent of the common fund created."); *In re Telectronics Pacing Sys.,* 137 F. Supp. 2d 985, 1046 (S.D. Ohio 2001) ("[T]he range of reasonableness . . . has been designated as between twenty to fifty percent of the common fund in several cases.").

### iv. No other agreements exist (Rule 23(e)(2)(C)(iv))

Plaintiffs must identify "any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv), 23(e)(3). No agreements exist.

### 4. The Proposed Settlement treats Class Members equitably relative to each other (Rule 23(e)(2)(D))

As in *Grissom I*, Plaintiff's accounting expert Donald Phend would consider Class Members' damages against the net settlement fund and construct a table that thoughtfully and fairly allocates damages. After adjustment for attorneys' fees and expenses and payment of any Court-approved service award, the remainder would be paid to Class Members according to their *pro rata* share of Defendant's deduction of processing and fractionation costs from royalties, including NGL transportation cost deductions and fuel, lost, and unaccounted-for gas ("FL&U") in-kind deductions calculated by Phend as follows:

a) Aggregate each Participating Class Member's deductions by Antero for production months June 2023 through March 2025 to determine the total class deductions for production months June 2023 through March, 2025;

b) Divide each Participating Class Member's total deductions by the total class deductions to determine each class member's pro-rata percentage share of the total class deductions;

c) Multiply each Participating Class Member's pro-rata share (e) by the amount remaining in the Qualified Settlement Fund after deductions for Total Settlement Expenses to determine each Participating Class Member's total payment.

Phend would perform the above calculation for each class member and list the results by each class member's owner number, name, address, Wellhead method deductions, NGL method deductions, total deductions, *pro rata* share, and individual payment. This proposed allocation is fair, equitable, and legally sound, and it adjusts each class member's payment *pro rata* to account for the awarded fees and costs. *See Boeing v. Van Gemert,* 44 U.S. 472, 482 (1980) ("[E]ach class member[] [has an] equitable obligation to share the expenses of litigation," including attorney's fees and costs).

## IV. The proposed notice program complies with Rule 23 and due process

According to the Settlement Agreement, Interim Class Counsel will work with settlement administrator Epperly Re: Solution to disseminate adequate and reasonable notice to Settlement Class Members in accordance with the form attached to the Settlement Agreement as Exhibit B.

Under Fed. R. Civ. P. 23(e)(1)(B) a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[I]ndividual notice must be provided to the Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974).

Following preliminary approval of this Settlement, the Settlement Administrator will provide notice of the proposed Settlement to those who would be bound by it. *See Komoroski v. Utility Service Partners Private Label, Inc.*, 2017 WL 3261030, *1 (W.D. Mo. 2017) ("The preliminary approval order will also authorize the parties to provide notice of the proposed

settlement to the class and set forth a schedule for objections, opt-outs, a final fairness hearing, and other deadlines.").

The proposed notice plan, attached as Exhibit B to the Settlement Agreement, created by interim Lead Counsel in conjunction with the Settlement Administrator, is reasonably calculated to apprise all Class Members of the pendency of the action. The Settlement Administrator will provide notice to Class Members via printed mail and email based on its database of contact information, through reasonable effort.

This will include an initial letter sent by First-Class U.S. mail informing Class Members of the Settlement (no claims will be required), including the Long-Form Notice, attached as Exhibit B to the Settlement Agreement. Any Class Notice returned as undeliverable, but with a forwarding address, shall be promptly remailed to the forwarding address by the Settlement Administrator. The Settlement Administrator shall use reasonable efforts to skip trace or otherwise search for and locate the whereabouts of any Class Member whose Class Notice is returned, including, but not limited to, performing a National Change of Address Registry Check and other searches for all Class Notices returned as undeliverable, without a forwarding address. If the Settlement Administrator learns of a new address for any Class Member whose Class Notice was returned via return mail, the Settlement Administrator will promptly remail the Settlement Notice. In addition, the Settlement Administrator is empowered to take any reasonable steps available to contact Class Members to provide notice of this Settlement.

The proposed notice attached as Exhibit B sufficiently describes in clear, concise, and easily understood language the nature of the action and claims, and that the terms of the Settlement Agreement, if approved, will be binding on all Settlement Class Members. The proposed notice allows requests for exclusion, provides access to relevant case documents, and announces upcoming deadlines.

All facets of this proposed notice plan provide the best notice practicable under the circumstances to Settlement Class Members. The notice plan comports with due process and the Federal Rules of Civil Procedure. At this stage of the settlement proceedings, Class Counsel request that the Court approve notice for dissemination by mail and, if necessary, email as set forth in the notice plan.

## V.     The Court should convert Interim Class Counsel to Lead Class Counsel

Appointing Interim Class Counsel as Lead Class Counsel will benefit the Settlement Class as Interim Class Counsel have done an extensive amount of work in investigating the claims, they have significant experience handling class actions, including oil-and-gas cases, they are familiar with the applicable law, and they have sufficient resources.

Under Federal Rule of Civil Procedure 23(g)(1), when the Court certifies a class, including for settlement, it "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). To determine whether an appointment should be made, Rule 23(g)(1) describes several factors for the Court to consider: (1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class. The appointed class counsel must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4).

Quickly and efficiently as this case resolved, Plaintiff's interim Class Counsel, Mendenhall Law Group, Karon LLC, and Bailey & Glaser LLP, performed extensive work investigating Plaintiff's claim. This investigation led to an expeditious 100 percent, all-cash settlement in addition to *Grissom I's* 100 percent, all-cash judgment. Interim Class Counsel counsel's experience in handling class actions, complex litigation, and claims of this type led to the impressive outcome here.

For these reasons, Plaintiff and Interim Class Counsel respectfully request the appointment of Mendenhall Law Group, Karon LLC, and Bailey & Glaser LLP for the purposes of representing the settlement class.

## VI. The Parties' proposed schedule of events

According to Rule 23, the Settlement Agreement, and the terms of a Preliminary Approval Order, the Parties propose the following schedule of events:

| Event | Date |
|---|---|
| Proposed Hearing on Unopposed Motion for Preliminary Approval of Class Settlement | |
| Last Day for the Plaintiffs to file Distribution Plan | 10 days after order granting preliminary approval |
| Issuing of Notice by First-Class U.S. Mail to all Class Members | 10 days after order granting preliminary approval |
| Exclusion and Objection Deadline | 30 days after Notice issues |
| Defendant's payment of $1,129,000 into the Qualified Settlement Fund (if Participation Threshold is met) | 37 days after Notice issues |
| Unopposed Motion for Final Approval of the Class Settlement and Motion for Attorneys' Fees and Expenses | 30 days before final approval hearing |
| Proposed Final Approval Hearing | |

## VII. Conclusion

For the foregoing reasons, Plaintiffs request that this Honorable Court grant their Unopposed Motion for Preliminary Approval of Class Settlement and (1) order preliminary approval of the Settlement, (2) approve the notices for dissemination to the Settlement Class Members pursuant to the notice plan, (3) Mendenhall Law Group, Karon LLC, and Bailey & Glaser LLP as Lead Class Counsel, and (4) schedule a Final Approval Hearing consistent with the parties' proposed schedule. A proposed Order granting Preliminary Approval is attached.

Dated: November 6, 2025    Respectfully submitted,

*s/Logan Trombley*
Logan Trombley (0096858)
**MENDENHALL LAW GROUP**
190 N. Union St., Suite 201
Akron, OH 44304
(330) 535-9160
logan@warnermendenhall.com

Daniel R. Karon (0069304)
**KARON LLC**
631 W. St. Clair Ave.
Cleveland, OH 44113
(216) 622-1851
dkaron@karonllc.com

John W. Barrett (admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
209 Capitol St.
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com

*Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Logan Trombley*
Logan Trombley (0096858)
